# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-1   Andrew H. Middlebrooks,

        Defendant.

_____/

Case: 2:22−cr−20516
Assigned To : Berg, Terrence G.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 10/11/2022
Description: INFO USA V. MIDDLEBROOKS (NA)

Violation: 18 U.S.C. § 1343

Wire Fraud

## INFORMATION

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1.    Andrew H. Middlebrooks (Middlebrooks) (D-1) was a resident of Detroit, Michigan and Houston, Texas, and was the majority owner, chief executive officer, chief investment officer, and portfolio manager of EIA All Weather Alpha Fund 1 Partners (EIA).

2.    EIA was a pooled investment fund company created by Middlebrooks. Middlebrooks solicited and sold limited partnership interests in EIA to investors in the Eastern District of Michigan and throughout the United States.

1

3.      To induce investors into purchasing limited partnership interests in EIA, Middlebrooks claimed EIA was able to exploit "inefficiencies" in global equity markets which would result in large returns for investors.

4.      Middlebrooks received over $39 million from over 100 unsuspecting investors.

## COUNT ONE
(18 U.S.C. § 1343 - Wire Fraud)

D-1 Andrew H. Middlebrooks

The general allegations are included in this count.

5.      In or about May 2017, through in or about May 2022, in the Eastern District of Michigan, Southern Division, and elsewhere, Middlebrooks, having devised a scheme and artifice to defraud and for obtaining money by means of false and fraudulent material pretenses, representations and promises, did the following.

## The Scheme

6.      In May 2017, Middlebrooks created EIA and marketed it as a private, pooled investment fund which used a unique and proprietary investment system that promoted the likelihood of unusually high rates of return.

7.  Investors quickly began purchasing limited partnerships in EIA and Middlebrooks used their money to trade in various global equity markets.

8.  From the beginning of the scheme Middlebrooks's investments failed to produce the returns investors anticipated resulting in catastrophic losses.

9.  Rather than admitting that EIA's fund was losing money, Middlebrooks, with intent to defraud, continued to solicit money and lied to investors about EIA's investment performance.

## Lulling

10. Until the Spring of 2022, Middlebrooks was able to hide his fraudulent conduct through an elaborate web of false and fraudulent material representations and promises he made to investors.

11. Throughout the scheme to defraud investors were given access to an internet portal that allowed them to track the performance of their investment portfolio with EIA.

12. Middlebrooks knew that if investors were given truthful information about their investments they would take their money out of EIA's fund. This would not only deplete the money Middlebrooks had access to, but it would also make it difficult for him to obtain new investors.

3

13. To create the false image that EIA was a successful company, Middlebrooks arranged for false information to be included in monthly statements uploaded to individual investment accounts through EIA's portal. The affect of this was to lull investors into believing they were making money and often tricked them into investing more money with EIA.

14. Each year, and in most months, EIA suffered significant losses. Knowing this and with intent to defraud, Middlebrooks created and distributed documents claiming that EIA's performance was exceptional. In one document, created in the fall of 2019, Middlebrooks claimed that EIA's track record included a cumulative return of 476.81%, with 81.82% of monthly trading showing a profit.

15. In furtherance of the scheme to defraud, to solicit new investors, and to lull existing investors, Middlebrooks created false monthly performance sheets representing that EIA had positive returns. For instance, in February 2021, Middlebrooks reported positive returns of 135.74% in 2020, when he knew EIA had incurred losses of over $13 million.

16. Also, in furtherance of the scheme to defraud, Middlebrooks lied to investors about how their money would be used. Middlebrooks told investors their money would be used exclusively for trading and money used for fees and expenses would be disclosed in accordance with EIA's investment agreement. In fact,

Middlebrooks took money from the fund for living expenses, and transferred money from the fund to his wife's business.

17. In a continuing effort to hide his fraudulent conduct and the massive losses EIA was incurring, Middlebrooks paid over $9 million back to investors claiming the money represented returns generated through EIA trades. In fact, these payments came from new investor money. This not only had the effect of lulling existing investors, but it also allowed Middlebrooks to continue soliciting new investors.

18. When Middlebrooks was asked by investors to show proof that EIA was profitable he, with intent to defraud, represented that EIA had engaged independent auditors to audit EIA's fund and that those audits supported the claims he was making about EIA's performance.

19. By the Spring of 2022, Middlebrooks's scheme to defraud began unraveling, and EIA's fund collapsed. Losses to at least 100 investors exceeded $27 million.

20. And for the purpose of executing the scheme, on or about November 12, 2019, Middlebrooks transmitted and caused the transmission by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures or sounds, in the form of a wire transfer of funds in the amount of $100,000 from

the Bank of America branch office in Farmington Hills, Michigan to Signature Bank in New York, NY.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – *Criminal Forfeiture*)

21. The general allegations and Count One of this Information are included here for the purpose of alleging forfeiture under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

22. After Middlebrooks is convicted of violating Title 18, United States Code, Section 1343, he shall forfeit to the United States of America, under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The forfeiture in this case may include entry of a forfeiture money judgment against Middlebrooks in an amount up to the value of the property subject to forfeiture for the violations of conviction.

23. If, by any act or omission of the defendant, the proceeds of the offense cannot be located upon the exercise of due diligence, have been transferred, sold to, or deposited with a third party, have been placed beyond the jurisdiction of the court, have been substantially diminished in value, or have been commingled with other

property which cannot be divided without difficulty, the United States of America shall seek to forfeit substitute property under Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), up to the value of the forfeitable property described above.

                        Respectfully submitted,

                        DAWN N. ISON
                        United States Attorney

                        JOHN K. NEAL
                        Assistant U.S. Attorney
                        Chief, White Collar Crimes Unit

                        KAREN L. REYNOLDS (31029)
                        Assistant United States Attorney
                        211 W. Fort Street, Suite 2001
                        Detroit, MI 48226-3220
                        (313) 226-9672
Dated:                  karen.reynolds@usdoj.gov

| (Companion Case information MUST be completed by AUSA and initialed.) |
|---|

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>2:22−cr−20516 |
|---|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: K.L.R |

**Case Title:** USA v. Andrew H. Middlebrooks

**County where offense occurred:** Wayne

**Check One:** ☒ Felony    ☐ Misdemeanor    ☐ Petty

    ____Indictment/ ✔ Information --- **no** prior complaint.
    ____Indictment/____Information --- based upon prior complaint [**Case number:**                    ]
    ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

October 11, 2022
Date

Karen L. Reynolds
Karen L. Reynolds
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9672
Fax:     (313) 226-2873
E-Mail address: karen.reynolds@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.